# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| ALISON VALENTE, JENNIFER BARLOW, KATHRYN MONROE, SOPHIA SMITH, STEPHANIE LEBEAU on behalf of themselves and all others similarly situated, | * * * * * * * | |
| Plaintiffs, | * * | |
| v. | * * * | 1:15-CV-02477 -ELR |
| INTERNATIONAL FOLLIES, INC. d/b/a THE CHEETAH and WILLIAM HAGOOD, | * * * * | |
| Defendants. | * | |

_____

**O R D E R**
_____

This matter is before the Court on Plaintiffs' Emergency Motion for a Temporary Restraining Order and Preliminary Injunction ("Motion") (Doc. No. 6). Plaintiffs argue that Defendants International Follies, Inc. doing business as The Cheetah ("The Cheetah") and William Hagood (collectively, "Defendants") began forcing Plaintiffs to sign an arbitration agreement which allegedly contains terms that prospectively settle Plaintiffs' Fair Labor Standards Act ("FLSA") claims. Plaintiffs argue the implementation of this arbitration agreement was retaliation for

asserting their FLSA rights. Additionally, according to Plaintiffs, Plaintiff Sophia Smith was terminated for refusing to sign the arbitration agreement. Plaintiffs request a variety of relief, including requiring Defendants to retract any statements concerning the requirement to sign the arbitration agreements and to reinstate Smith. A hearing on Plaintiffs' Motion was held August 5, 2015. For the reasons discussed below, Plaintiffs' Motion (Doc. No. 6) is **DENIED**.

## I. PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER STANDARD

It is well established in this Circuit that a temporary restraining order is an "extraordinary and drastic remedy[.]" Zardui-Quintana v. Richard, 768 F.2d 1213, 1216 (11th Cir. 1985). Further, a plaintiff seeking a temporary restraining order must demonstrate that: (1) there is a substantial likelihood of success on the merits; (2) he will suffer irreparable injury if relief is not granted; (3) the threatened injury outweighs any harm the requested relief would inflict on the non-moving party; and (4) entry of relief would serve the public interest. E.g., KH Outdoor, LLC v. City of Trussville, 458 F.3d 1261, 1268 (11th Cir. 2006). Plaintiff has the same burden in obtaining a preliminary injunction. Haitian Refugee Ctr., Inc. v. Baker, 949 F.2d 1109, 1110 (11th Cir. 1991). The decision as to whether a plaintiff carried this burden "is within the sound discretion of the district court and will not be disturbed absent a clear abuse of discretion." Int'l Cosmetics Exch., Inc. v. Gapardis Health & Beauty, Inc., 303 F.3d 1242, 1246 (11th Cir. 2002) (quoting

Palmer v. Braun, 287 F.3d 1325, 1329 (11th Cir. 2002)) (internal quotation marks omitted).

## II. FACTUAL BACKGROUND

Plaintiffs are individuals who have been employed as entertainers at The Cheetah, an adult entertainment nightclub in Atlanta. Alison Valente ("Valente") filed this lawsuit on July 10, 2015 alleging that Defendants failed to pay her and others similarly situated minimum wage and overtime in violation of the FLSA, 29 U.S.C. § 207 *et seq*. (Doc. No. 1.) Other Cheetah entertainers Jennifer Barlow ("Barlow"), Kathryn "Katie" Monroe ("Monroe"), Sophia Smith ("Smith"), and Stephanie LeBeau ("LeBeau") joined Valente (collectively "Plaintiffs") in this suit when Plaintiffs filed their First Amended Complaint for violations of the FLSA on July 17, 2015. (Doc. No. 4.) In addition to their First Amended Complaint, Plaintiffs also filed an Emergency Motion for a Temporary Restraining Order and Preliminary Injunction on July 17, 2015 (Doc. No. 6).

According to Defendants, in or around October 2011, The Cheetah implemented an Arbitration Policy (the "2011 Arbitration Policy"), which requires all entertainers to agree to arbitrate certain claims against The Cheetah. (Declaration of John Braglia ("Braglia Decl.") ¶ 3, Doc. No. 19-1.) The 2011 Arbitration Policy purportedly requires entertainers to bring any claims they might have, including FLSA claims, in arbitration. (Braglia Decl., Ex. A.) The Parties dispute whether the 2011 Arbitration Policy was provided to Plaintiffs, and as a

3

result, they dispute whether Plaintiffs are bound by the Policy. Defendants assert the 2011 Arbitration Policy was posted conspicuously in a break room of The Cheetah premises continually from October 2011 to July 10, 2015. (Braglia Decl. ¶ 3; Declaration of Holly Wood ("Wood Decl.") ¶ 8, Doc. No. 19-2.)

On March 1, 2015, Valente emailed Mr. Braglia, the general manager at The Cheetah, regarding her termination in February 2015. (Doc. No. 25-2 at 2.) Valente stated that she and Monroe were both terminated over "chargeback" issues. (Id.) Valente writes that it is her "strong belief that [she and Monroe] have been singled out in a very discriminatory fashion, due to [their] non-compliance with certain nefarious activities within the club." (Id.) Valente stated she was bringing this matter to Mr. Braglia's attention for two reasons:

1.) We would like to resume our employ [sic] at "The Cheetah" effective immediately.

2.) We would like the working environment there to be one in which we are allowed to sell to the limit of the company's guidelines. And while at work, we expect to be treated as professionals, and not be subjected to any physical, mental, psychological, and verbal abuse.

(Id.) The next day, Valente forwarded her email to Mr. Mangiafico, The Cheetah's lawyer, requesting that The Cheetah resolve her and Monroe's termination dispute amicably and before she retained counsel. (Doc. No. 6-3.)

Also in May 2015, Mr. Braglia decided to implement a revised 2015 Arbitration Agreement ("2015 Arbitration Agreement") applicable to the

4

entertainers.[1] (Braglia Decl. ¶ 5.) Importantly, testimony indicates that "[a]lthough the Cheetah had been considering revising the 2011 Arbitration Policy earlier in 2015, a decision was made to wait until after [the undersigned's] decision was issued in Tiffany Bromirski, on behalf of herself and others similarly situated vs. International Follies, Inc., d/b/a The Cheetah, et al., Case No. 1:13-cv-03379-ELR. (Id.) That decision was issued on May 12, 2015. On June 4, 2015, Mr. Braglia reviewed and approved a final version of the 2015 Arbitration Agreement. (Id.) On June 10, 2015, a notice was posted beside the 2011 Arbitration Policy, notifying entertainers that the 2011 Arbitration Policy was being modified, and the 2015 Arbitration Agreement would be effective July 10, 2015. (Id. ¶ 6, Ex. B; Wood Decl. ¶ 9.)

It was not until a June 12, 2015 letter from Plaintiffs' counsel, Mr. McDonough, to Mr. Mangiafico that Valente and Monroe specifically lodged complaints related to their potential FLSA claims. (Doc. No. 6-4.) This letter

---

[1] Plaintiffs vigorously contest the validity of the 2015 Arbitration Agreement, in large part because of Paragraph 15, which reads:
> You have agreed that you are an independent contractor and not an employee of International Follies. In the event that you ever assert that you are an employee and not an independent contractor, then you acknowledge and agree that table dance fees and any other fees established by International Follies that you have been permitted to retain as part of your income are setoffs and shall be credited against any minimum wage and overtime obligations that otherwise would be due to you if you were determined to be an employee and not and independent contractor.

(Doc. No. 19-1 at 19.) While the Court is troubled by this language, any challenge to it is more suitably settled when deciding Defendants' pending Motion to Compel Arbitration (Doc. No. 21).

5

included an allegation that The Cheetah was misclassifying entertainers as independent contractors in violation of the FLSA. (Id.)

Less than a month later, on July 10, 2015, The Cheetah implemented the 2015 Arbitration Agreement. (Braglia Decl. ¶ 7.) Shortly after midnight on July 10, 2015, Defendants distributed the 2015 Arbitration Agreement to entertainers present at The Cheetah. (Declaration of Sophia Smith ("Smith Decl.") ¶ 5, Doc. No. 6-6.) While other entertainers signed the 2015 Arbitration Agreement, Smith refused to sign. (Id. ¶¶ 6–7.)

Smith contends The Cheetah management told her that she could no longer work at The Cheetah unless and until she signed the Arbitration Agreement. (Id. ¶ 6.) Defendants contend that on July 11, 2015, "house mom" Kristy Boynton told Smith that she did not have to sign the 2015 Arbitration Agreement, and there was no consequence for her decision. (Declaration of Kristy Boynton ("Boynton Decl.") ¶ 3, Doc. No. 19-4.) Plaintiff contends she was effectively terminated; she testified: "I refused to sign the Arbitration Agreement. As a result, I did not work my scheduled shift on the evening of Friday, July 10, 2015." (Smith Decl. ¶ 9.) Defendants argue Smith is free to return to work at any time, without signing the 2015 Arbitration Agreement; her continued employment, however, would be deemed acceptance of the Agreement.

## III. ANALYSIS

At this early point in the litigation, the Court cannot find Plaintiffs have shown a likelihood of success on the merits for their retaliation claim. "The FLSA protects persons against retaliation for asserting their rights under the statute." Wolf v. Coca-Cola Co., 200 F.3d 1337, 1342 (11th Cir. 2000). In order to succeed on a retaliation claim pursuant to 29 U.S.C. § 215(a)(3), Plaintiff must show (1) the claimant engaged in activity protected under the FLSA; (2) the claimant subsequently suffered adverse action by the employer; and (3) a causal connection exists between the employee's activity and the employer's adverse action. Id. at 1342–43.

> An employee engages in protected activity if he "file[s] any complaint or institute[s] or cause[s] to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding ...." 29 U.S.C. § 215(a)(3). The Eleventh Circuit has held that informal complaints concerning conduct which **implicates the FLSA qualify as protected activity**. . . . In other words, the fact that an employee does not refer specifically to the FLSA does not mean his informal complaint is unprotected**, so long as the complaint concerns the employer's wage and hour practices.**

Burnette v. Northside Hosp., 342 F. Supp. 2d 1128, 1133–34 (N.D. Ga. 2004) (internal citations omitted) (emphasis added). Here, Plaintiffs cannot show they engaged in an activity protected under the FLSA preceding The Cheetah's decision to change the arbitration policy, so they cannot show the required causal connection.

7

Plaintiffs' Reply brief clarifies what protected activity they are claiming: "Plaintiffs specified exactly what the protected activity was: complaining to The Cheetah about the exact subject of this FLSA Litigation." (Doc. No. 25 at 1–2 n.2.) Plaintiffs argued:

> The Defendants, through Mr. Braglia and Defendants' attorney, Mr. Mangiafico, were apprised of the claims through emails and conversations between them and Ms. Valente (also speaking on behalf of Plaintiff Monroe) dating back to ***March of 2015***—well before the time in May 2015 that Mr. Braglia allegedly "decided" to implement the 2015 Entertainer Arbitration Agreement.

(Id. at 1.)

At this stage, the Court is not persuaded that Valente's March 2015 communications are protected activity. These communications do not reference an FLSA claim, nor do they mention the employer's wage and hour practices. The Court cannot find Plaintiff will likely succeed in showing these complaints "concern[] conduct which implicated the FLSA." Burnette, 342 F. Supp. 2d at 1133–34. While Plaintiffs' June 12, 2015 letter clearly presents an FLSA complaint which would likely be "protected activity," this letter came after a final version of the 2015 Arbitration Agreement had been approved and after notice of the upcoming change was provided to the entertainers. Because it appears Defendants took action to implement the 2015 Arbitration Agreement before they were aware of these particular Plaintiffs' FLSA claims, the implementation of the 2015 Arbitration Agreement does not appear to be retaliation.

As to Smith's claim that she was terminated in retaliation for asserting her FLSA rights, the Court does not find the evidence before it shows a likelihood of success on this claim. The evidence presents a disputed question over whether Smith was in fact "terminated." The evidence suggests Smith chose not to return to work because she did not want to be bound by the 2015 Arbitration Agreement. Because Plaintiff has not shown the implementation of the 2015 Arbitration Agreement was retaliation, Smith's decision regarding that agreement – even if that decision effectively terminated her employment – cannot be retaliation.

At this time, the Court cannot say Plaintiffs are likely to succeed on the merits of their retaliation claim. When a party seeking injunctive relief fails to show a substantial likelihood of success on the merits, it is unnecessary for the Court to consider irreparable harm, balance of hardships, or the public interest. Redford v. Gwinnett Cty. Judicial Circuit, 350 Fed. App'x 341, 345 (11th Cir. 2009) (per curiam) ("[A] preliminary injunction is an extraordinary remedy not to be granted unless the movant clearly established the 'burden of persuasion' as to *each* of the four prerequisites.") (quoting Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000) (emphasis added)).

## IV. CONCLUSION

Because the Court cannot determine that Plaintiffs are likely to succeed on the merits of their retaliation claim, Plaintiffs have not met their burden to obtain a

9

temporary restraining order or preliminary injunction. Plaintiffs' Motion (Doc. No. 6) is **DENIED**.

**SO ORDERED**, this 7th day of August, 2015.

_____
ELEANOR L. ROSS
UNITED STATES DISTRICT JUDGE